UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STEPHEN P. SCHOEMEHL, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 4:07CV287 HEA |
| | ) |
| RENAISSANCE ELECTRIC COMPANY Inc., et al., | ) |
| | ) |
| Defendants. | ) |

# OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants Hunt Construction Group Inc. and Daktronics Inc.'s Motion to Dismiss for Failure to State a Claim, [Doc. No. 10]. Plaintiffs oppose the motion and have filed a written response thereto. Defendants filed their reply and the matter is therefore fully briefed. For the reasons set forth below, the Motion is granted.

## Facts and Background

Plaintiffs' Amended Complaint alleges this action arises under Section 301 of the Labor Management Relations Act (LMRA) of 1947, as amended, 29 U.S.C. § 185, and Sections 502 and 515 of the Employee Retirement Income Security Act (ERISA) of 1974, 29 U.S.C. §§ 1132 and 1145. The First Amended Complaint further alleges the following: Plaintiff Local 1 International Brotherhood of

Electrical Workers AFL-CIO is a voluntary unincorporated association. The Health and Welfare Fund is a covered "employee welfare benefit plan" as defined in Section 3(1) of ERISA and is administered in St. Louis, Missouri. The individual Plaintiffs are the Trustees of the Health and Welfare Fund and control and manage the operation and administration of the Health and Welfare Fund. Plaintiffs claim to be owed certain benefit funds contributions by virtue of various labor agreements entered into by and between Defendant Renaissance Electric Company, Inc. and St. Louis Chapter, National Electrical Contractors Association and Local 1, and Sign Erection Companies and Local 1. Plaintiffs claim that although Renaissance filed reports, it failed to fully pay contributions due for hours worked by its bargaining unit employees as required by the agreements. Plaintiffs seek an accounting and audit, unpaid delinquent contributions owed by Renaissance, liquidated damages and interest owed on the unpaid and delinquent contributions, and attorneys fees and costs from Renaissance.[1]

Counts XII and XIII of the First Amended Complaint are brought against Hunt Construction Group, Inc. and Daktronics, respectively. Hunt Construction

---

[1] Renaissance has failed to file a responsive pleading in this matter. On June 28, 2007, the Court entered Partial Default Judgment against Renaissance for all unpaid wages and unpaid contributions, interest and liquidated damages on all unpaid contributions and attorney's fees and costs and ordered an accounting for the purposes of obtaining an accurate amount of contributions owed by Renaissance as well as any interest and liquidated damages.

was the Project Contractor for the St. Louis Cardinals Ballpark Project. On February 10, 2004, Hunt Construction entered into a Project Labor Agreement with Local 1 which covered work performed by employees of Renaissance on the Ballpark Project. Hunt subcontracted with Daktronics, Inc. to construct and install electric signs for the Ballpark Project. Daktronics thereafter subcontracted with Renaissance to assemble and install electric signs for the Ballpark Project. Because Renaissance failed to pay $188,576.07, Plaintiffs seek recovery of the unpaid overdue amounts owed by Renaissance from Hunt Construction and Daktronics. Plaintiffs also seek liquidated damages from these defendants.

Plaintiffs contend that Section 4.09 of the Project Labor Agreement provides the basis upon which Hunt Construction and Daktronics are jointly and severally liable for the unpaid fringe benefits. The Project Labor Agreement is attached as Exhibit 6 to the First Amended Complaint. Specifically, Section 4.09 provides:

> Project Contractor and its Subcontractors performing Construction Work on the Project shall pay into fringe benefit funds directly accrued to the employees (such as pension, health and welfare, training, vacation, holiday, income security, annuity, etc.) and hereby adopts and agrees to be bound by the written terms of legally established trust agreements specifying the detailed basis upon which payments are to be made into, and agrees to accept as its representatives in administration of such funds, the Management and Labor Trustees servicing such funds. Subcontractors agree to execute a Participation Agreement and any other documents reasonably necessary or appropriate to effect their obligations with respect to such fringe

> benefit payments. The Owner shall support the Unions to the extent possible within the bounds of this Agreement in resolving any issues related to Project Contractor's or its Subcontractors' payment of fringe benefits. Upon receipt of notice from any Union that fringe benefit contributions have not been paid to the Union for the previous month for work performed on the Project, Owner and Project Contractor will withhold an equal amount from that Subcontractor's current pay applications until the contribution has been paid, and Project Contractor shall have the right to make fringe benefit contributions on behalf of any subcontractor who has failed to timely make such contributions.

Hunt Construction and Daktronics move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted.

## **Motion to Dismiss Standard**

The purpose of a motion to dismiss is to test the sufficiency of the complaint. However, on May 21, 2007, the Supreme Court determined that *Conley v. Gibson's*, 355 U.S. 41, 45-46 (1957), "no set of facts" language "has earned its retirement." *Bell Atlantic Corp. v. Twombly,* --- U.S. ----, ----, 127 S.Ct. 1955, 1969 (May 21, 2007). Noting the plaintiff's "obligation to provide the 'grounds' of his 'entitle [ment] to relief,'" the Supreme Court held that a viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic,* 127 S.Ct. at 1964-65, 1974. In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965. The

Supreme Court explained that this new standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Id.* On the other hand, the Court noted that "of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). "[P]rior rulings and considered views of leading commentators" can assist in assessing the plausibility of the plaintiffs' allegations. *Id.* at 1966.

When considering a motion to dismiss, courts are still required to accept the complaint's factual allegations as true. *Id.* at 1965. All reasonable inferences from the complaint must be drawn in favor of the nonmoving party. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). "In considering a motion to dismiss, courts accept the plaintiff's factual allegations as true, but reject conclusory allegations of law and unwarranted inferences." *Silver v. H & R Block, Inc.,* 105 F.3d 394, 397 (8th Cir. 1997). Furthermore, the Court, in construing the Complaint, may also consider the attachments thereto. Any written instrument attached to a complaint is considered a part of the complaint, and may be considered in ruling on a motion to dismiss. Fed.R.Civ.P. 10(c); *Quinn v. Ocwen Federal Bank FSB,* 470 F.3d 1240, 1244 (8th Cir. 2006). ("[W]ritten instruments attached to the

complaint become part of it for all purposes. *See Fed.R.Civ.P. 10(c).* 'For that reason, a court ruling on a motion to dismiss under Rule 12(b)(6) may consider material attached to the complaint.' *Abels,* 259 F.3d at 921.")

## Discussion

Hunt Construction and Daktronics argue that the Project Labor Agreement unambiguously on its face establishes that they did not guarantee payment for Renaissance's obligations. On the other hand, Plaintiffs assert that the Agreement does require payment, and is, at the worst, ambiguous as to whether Section 4.09 creates an obligation by Hunt Construction and Daktronics to pay.

Whether language is ambiguous is a question of law for the court. *Phipps v. School District of Kansas City,* 645 S.W.2d 91, 100 (Mo.Ct.App.1982). If a contract is unambiguous, the intention of the parties and the legal import of the language of the contract cannot be varied by parol or extrinsic evidence. *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 67 (8th Cir.1994) (applying Missouri law).

"To determine whether a contract is ambiguous, [the Court] consider[s] the instrument as a whole, giving the words contained therein their ordinary meaning. *Young Dental Mfg. Co. v. Engineered Prods., Inc.,* 838 S.W.2d 154, 156 (Mo.Ct.App.1992) (citation omitted). A contract is not ambiguous merely because the parties dispute its meaning. *Sligo. [v. Nevois],* 84 F.3d [1014], 1019 [(8th

Cir.1996)](citing *Young Dental Mfg.,* 838 S.W.2d at 155-56).*"* *Deal v. Consumer Programs, Inc.,* 470 F.3d 1225, 1230 (8th Cir. 2006).

"When a contract uses plain and unequivocal language, it must be enforced as written." *Lake Cable, Inc. v. Trittler,* 914 S.W.2d 431, 436 (Mo.Ct.App.1996) (citation omitted); *see, e.g., Sligo, Inc*, 84 F.3d at 1019.

Section 4.09 of the Project Labor Agreement requires the Project Contractor, Hunt Construction, and its Subcontractors, which includes Daktronics, to pay into fringe benefit funds directly accrued *to the employees*. The common and ordinary meaning of "employee" can only lead to the interpretation that the obligation extends solely to Hunt Construction and the subcontractor's own employees. While Plaintiffs argue that these defendants are "adding" language to the contract that does not exist, *i.e.*, "their own" employees, under Plaintiffs' interpretation, the meaning of the term "employee" must include the addition of language favorable to Plaintiffs' position to reach Plaintiffs' conclusion, *i.e.*, "any and all employees working on the project." Plaintiffs' interpretation strains the common and ordinary meaning of "employee." An employee is defined as: "A person who works in the service of another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance." **Black's Law Dictionary** (8th ed. 2004). By definition, in order to be an

"employee," one must work in the service of another, the "employer." Clearly, the prepositional phrase "to the employees," (with respect to benefits accrued), modifies the subject nouns, "Project Contractor and its Subcontractors." Thus, one can only be an "employee" of the Project Contractor or its Subcontractors if that "employee" is "in the service of" the specifically named Project Contractor and its subcontractors, not each and every "employer" on the project.

Furthermore, when read in its entirety, the latter portion of Section 4.09 would become meaningless. That portion provides:

> Upon receipt of notice from any Union that fringe benefit contributions have not been paid to the Union for the previous month for work performed on the Project, Owner and Project Contractor will withhold an equal amount from that Subcontractor's current pay applications until the contribution has been paid, and Project Contractor shall have the right to make fringe benefit contributions on behalf of any subcontractor who has failed to timely make such contributions.

If Hunt Construction were <u>required</u> to make contributions for any subcontractors, including Renaissance, there would be no need to articulate the "right" to do so upon notification of the failure of Renaissance to pay.[2]

Plaintiffs argue that because the Preamble of the Agreement shortens Hunt

---

[2] There is no allegation that Hunt Construction was notified of the default in payment of the fringe benefits owed by Renaissance. Hunt Construction was therefore not required to withhold any amount from Renaissance's pay applications. The "right" to make fringe benefits accordingly, did not become applicable.

- 8 -

and all of its subcontractors to, "the Employer," it has been established that the parties intended Plaintiffs' interpretation of Section 4.09. This argument is patently without merit. The Preamble, as Defendants aptly point out, is not a definitional section. Rather, the designation "Employer" was a technique utilized by the parties to shorten the designation of one side of the agreement *vis a vis* the Union, not a specific intent to impose an obligation on Hunt Construction and each and every one of the subcontractors to pay fringe benefits for any delinquent subcontractor. Even assuming that the parties had intended to encompass Hunt Construction and all of its subcontractors as "employers" throughout the agreement, Plaintiffs' argument fails. Section 4.09 specifically denotes "Project Contractor" and "its Subcontractors" in setting forth the fringe benefit obligation; it does not detail this obligation as to the "Employer." Thus, once again, it is clear that the parties intended the obligation extend to these defendants with respect to their employees, not all employees, no matter whose employees they may be.

## Conclusion

The terms of the Project Labor Agreement are unambiguous as to the meaning of "employee." Under the terms of the Agreement, neither Hunt Construction nor Daktronics is obligated to pay Plaintiffs overdue fringe benefits on behalf of Renaissance. The Project Labor Agreement obligates each employer to

pay fringe benefits on behalf of its own employees. Because Plaintiffs seek to hold Hunt Construction and Daktronics jointly and severally liable for an obligation that they do not owe, Plaintiffs' cannot state a cause of action against these defendants.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, [Doc. No. 10], is granted and this matter is dismissed.

Dated this 12th day of July, 2007.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE